# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Berkley National Insurance Company, | Civil No. 17-5160 (DWF/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Janice Franklin, as Trustee for the Heirs and Next-of-Kin of William Franklin, Deceased, | |
| Defendant. | |

Dana A. Rice, Esq., and Suzanne L. Jones, Esq., Hinshaw & Culbertson LLP, counsel for Plaintiff.

Scott M. Strand, Esq., Cahill Law Office, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on cross motions for partial summary judgment brought by Plaintiff Berkley National Insurance Company ("Berkley") (Doc. No. 31) and Defendant Janice Franklin, as trustee for the heirs and next-of-kin of William Franklin, deceased ("Franklin Estate") (Doc. No. 27). For the reasons set forth below, the Court grants Franklin Estate's motion and denies Berkley's motion.

## BACKGROUND

On April 25, 2017, William Franklin was involved in a car accident in Duluth, Minnesota ("Accident"). (Doc. No. 21 ("Am. Compl.") ¶¶ 6, 8; Doc. No. 22 ("Answer")

¶ 4.) At the time of the Accident, Mr. Franklin was on a business trip for his employer, ISD 152 Moorhead ("School District"), and was driving a car that the School District rented from Enterprise Rent-A-Car. (Am. Compl. ¶¶ 6-7; Answer ¶ 4.) Mr. Franklin died on May 3, 2017, and the Franklin Estate alleges that the cause of Mr. Franklin's death was the injuries he suffered in the Accident. (Am. Compl. ¶ 13; Answer ¶ 4.)

At the time of the Accident, the driver of the vehicle that struck Mr. Franklin's car was insured with American Family Insurance, providing up to $100,000 of bodily injury liability coverage. (Doc. No. 30 ("Strand Aff.") ¶ 2, Ex. 4.) The Franklin Estate agreed to a release of all claims against American Family Insurance and the driver of the vehicle that struck Mr. Franklin's car in exchange for the $100,000 bodily injury coverage. (Strand Aff. ¶ 2, Ex. 5.) The release specifically reserved all claims for future underinsured motorist benefits. (*Id.*)

The Franklin Estate contends that $100,000 is insufficient to fully compensate the Franklin Estate for damages caused by the accident. (Answer at 5 ¶ 12.) The Franklin Estate therefore filed a claim with Berkley requesting that Berkley provide underinsured motorist coverage to the Franklin Estate pursuant to an insurance policy that Berkley issued to the School District, *i.e.* Business Auto Policy number HMP 8525242-10 for the policy period of July 1, 2016 to July 1, 2017 ("Franklin Claim"). (Am. Compl. ¶ 21, Ex. A ("Berkley Policy"); Answer at 2 ¶ 9, at 5 ¶ 3.) The parties disagree, however, as to whether the Berkley Policy is required to extend underinsured motorist ("UIM") coverage to the rental vehicle that Mr. Franklin was driving at the time of the Accident.

The Berkley Policy provides business auto liability coverage and $1,000,000 of UIM coverage for each covered accident. (Berkley Policy at 36 ("UIM Endorsement").) Specifically, the UIM Endorsement states:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

(Am. Compl. ¶ 22; Berkley Policy at 36; Answer ¶ 9.) The Berkley Policy further provides that coverages only extend to "those 'autos' shown as covered 'autos'," as designated by "one or more of the symbols from the Covered Autos Section" of the Berkley Policy. (Am. Compl. ¶ 27; Berkley Policy at 14; Answer ¶ 9.) Regarding UIM coverage, the Berkley Policy specifically defines a "covered 'auto'" through the use of Symbol 6. (*Id.*) The Berkley Policy defines Symbol 6 as:

> Only those "autos" you own because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorist Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

(*Id.*) The parties agree that the School District does not own the car that Mr. Franklin was driving at the time of the Accident.

> The UIM Endorsement outlines who qualifies as an "insured":
>
> If the Named Insured is designated in the Declarations as . . . [a] partnership, limited liability company, corporation or any other form of organization, then the following are "insured": anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered

3

> "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

(Am. Compl. ¶ 26; Berkley Policy at 37; Answer ¶ 9.) Neither party contends that the rental vehicle that Mr. Franklin was driving was a "temporary substitute for a covered 'auto'."

In its First Amended Complaint, Berkley brings a declaratory judgment action requesting that the Court find and declare that: (1) the Berkley Policy does not provide UIM coverage for the Franklin Claim ("Count 1"); and (2) the Franklin Estate is not entitled to UIM coverage because it is not legally entitled to recover compensatory damages from the owner or driver of an "underinsured motor vehicle" ("Count 2"). (Am. Compl. ¶¶ 30-51.) The Franklin Estate counterclaimed requesting that the Court find and declare that: (1) Mr. Franklin is an insured under the Berkley Policy pursuant to Minn. Stat. § 60A.08, subd. 12 ("Counterclaim 1"); and (2) the Franklin Estate is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" ("Counterclaim 2"). (Answer at 3-5.) On May 11, 2018, the Court granted the parties' request to engage in early dispositive motion practice with respect to the purely legal issues addressed in the pleadings. (Doc. No. 26.) Both parties now move for partial summary judgment seeking judgment in their favor on Count 1 and Counterclaim 1.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

II. **UIM Coverage Under the Policy**

Both parties' motions for partial summary judgment center on the issue of whether, as a matter of law, the Berkley Policy is required to extend its UIM coverage to the rental vehicle operated by Mr. Franklin. (Doc. No. 29 at 2; Doc. No. 33 at 10.) Relevant to the issue are two Minnesota statutes: (1) Minn. Stat. § 60.08A, subd. 12; and (2) Minn. Stat. § 65B.49, subd. 5a. Section 60.08A, subd. 12, provides that "[a]ll commercial automobile liability policies must provide coverage for rented vehicles as

5

required in chapter 65B. This coverage can be excess over any and all specific motor vehicle coverage that is applicable." Section 65B.49, subd. 5a, provides:

> (a) Every plan of reparation security, wherever issued, insuring a natural person as named insured, covering private passenger vehicles as defined under section 65B.001, subdivision 3, and pickup trucks and vans as defined under section 168.002 must: (1) provide that all of the obligation for damage and loss of use to a rented private passenger vehicle, including pickup trucks and vans as defined under section 168.002, and rented trucks with a registered gross vehicle weight of 26,000 pounds or less would be covered by the property damage liability portion of the plan; and (2) extend the plan's basic economic loss benefits, residual liability insurance, and uninsured and underinsured motorist coverages to the operation or use of the rented motor vehicle.

Together, the statutes require that all commercial automobile liability policies "wherever issued, insuring a natural person as a named insured, covering private passenger vehicles . . . must . . . extend [its] . . . uninsured and underinsured motorist coverages to the operation or use of the rented motor vehicle." Minn. Stat. §§ 60.08A, subd. 12; 65B.49, subd.5a.

Berkley contends that the statutes do not require commercial automobile policies issued to organizations, as opposed to natural persons, to provide UIM coverage to rental vehicles. (Doc. No. 33 at 11.) Consequently, Berkley argues that because the Berkley Policy was issued to the School District, UIM coverage does not need to extend to Mr. Franklin's rental vehicle. (*Id.*) To require otherwise, Berkley asserts, would essentially ignore the phrase "insuring a natural person as named insured." (*Id.* at 13.)

Both parties cite *Turner v. Mutual Service Cas. Ins. Co.*, in support of their arguments. 675 N.W.2d 622 (Minn. 2004). In *Turner*, as here, the plaintiffs ("Turners") were driving an employer-provided rental vehicle when they were injured in an

6

automobile accident while on a business trip. *Id.* at 623. The Turners sought UIM coverage from their employer's insurance carrier, Liberty Mutual Insurance Company. *Id.* But Liberty Mutual, like Berkley here, offered UIM coverage to persons occupying a "covered auto," which it defined as "only those 'autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject uninsured motorist coverage." Liberty Mutual did not own the rental vehicle that the Turners were driving, and therefore argued that its policy did not extend UIM coverage to the Turners. *Id.*

In *Turner*, the Minnesota Supreme Court held that Liberty Mutual's policy was not obligated under the no-fault statute to extend its UIM coverage to the Turners. *Id.* at 625-26. As relevant here, however, the Minnesota Supreme Court concluded that all commercial policies must provide for rental vehicles the coverages set forth in Minn. Stat. § 65B.49, subd. 5a. *Id.* at 626. The Court's holding was based on the fact that, at the time of the Turners' accident, subdivision 5a did not include UIM coverage; now, it does. *See* Minn. Stat. § 65B.49, subd. 5a(2) (2018). It is therefore a natural extension of *Turner* to conclude that section 65B.49, subd. 5a, mandates UIM coverage for rental vehicles.

Having concluded that the Berkley Policy must extend UIM coverage to Mr. Franklin's rental vehicle, the Court next turns to Berkley's argument that Minn. Stat. § 65B.49, subd. 3a(5), restricts the Franklin Estate's ability to collect UIM benefits. (Doc. No. 33 at 16.) Section 65B.49, subd. 3a(5) provides:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

Relying on *West Bend Mutual Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693 (Minn. 2009), Berkley argues that subdivision 3a(5) limits primary UIM coverage to the policy that specifically covers the occupied vehicle. (Doc. No. 33 at 19.) In *West Bend*, the Minnesota Supreme Court interpreted subdivision 3a(5) and noted:

> [Subdivision 3a(5)] contemplates that primary UIM benefits are available from the policy specifically covering the occupied vehicle. . . . It would be wholly inconsistent with the statutory priority scheme to interpret "the limit specified for that motor vehicle" in the first sentence of subdivision 3a(5) to mean the UIM limit specified in any policy that extends UIM coverage to a person occupying a motor vehicle not specifically identified or described by the policy.

776 N.W.2d at 700. Berkley contends that this means the Franklin Estate cannot collect UIM benefits under the Policy because the Policy does not specifically cover Mr. Franklin's rental vehicle. (Doc. No. 33 at 20.)

The Court disagrees. *West Bend* is inapposite because the vehicle in that case had primary coverage under a policy issued to the vehicle's owner. 776 N.W.2d at 696, 699. Nevertheless, the claimant sought "co-primary underinsurance" coverage. *Id.* at 701. The Minnesota Supreme Court therefore considered whether the injured driver's business

8

insurance policy provided additional primary UIM coverage. *Id.* at 700. The Minnesota Supreme Court concluded that it did not, and that requiring two policies to "share co-primary underinsurance liability" would be contrary to the "two-tiered statutory priority scheme in subdivision 3a(5)." *Id.* at 699. Here, the optional insurance provided by Enterprise Rent-A-Car was declined. Accordingly, the Franklin Estate is not asking Berkley to "share co-primary underinsurance liability." Instead, the Franklin Estate argues that Berkley is the sole insurer of Mr. Franklin's rental vehicle. Additionally, the car in *West Bend* was owned by a customer of the claimant's business and was not a rental vehicle. *Id.* at 696. Consequently, the claim in *West Bend* did not implicate the rental-vehicle coverage scheme in Minn. Stat. §§ 60.08A, subd. 12 and 65B.49, subd.5a. Based on the foregoing, the Court concludes that Berkley bears sole primary underinsurance liability by way of the statutorily mandated extension of the Policy's UIM coverage to Mr. Franklin's rental vehicle.

Here, viewing the evidence in the light most favorable to Berkley, the Court concludes that there are no fact issues that preclude summary judgment in the Franklin Estate's favor on Count 1 and Counterclaim 1. In particular, the Court concludes that Minn. Stat. § 60A.08, subd. 12, Minn. Stat. § 65B.49, subd. 5a, and *Turner* mandate that the Berkley Policy extend its UIM coverage to the rental vehicle operated by Mr. Franklin. Additionally, the Court concludes that Berkley is the primary UIM insurer for the loss identified in the Franklin Claim. The Franklin Estate is therefore entitled to summary judgment on Count 1 and Counterclaim 1.

9

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED:**

1. Plaintiff Berkley National Insurance Company's Motion for Partial Summary Judgment (Doc. No. [31]) is **DENIED**.

2. Defendant Janice Franklin, as trustee for the heirs and next-of-kin of William Franklin, deceased's Motion for Partial Summary Judgment (Doc. No. [27]) is **GRANTED**.

3. Berkley shall provide UIM coverage to the Franklin Estate for the Franklin Claim pursuant to the Policy.

Dated: January 7, 2019          s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge